**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2014 MSPB 74**

Docket No. CH-0752-10-0294-I-2

**Damon J. Brown,**

**Appellant,**

**v.**

**Department of Defense,**

**Agency.**

September 12, 2014

Andres Grajales, Esquire, Washington, D.C., for the appellant.

Neil Bloede, Indianapolis, Indiana, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1      The agency has filed a petition for review of an initial decision that reversed the agency's removal action. The appellant has filed a cross petition for review of the initial decision's finding that he did not prove harmful error. For the following reasons, we GRANT the agency's petition for review, DENY the appellant's cross petition for review, REVERSE the initial decision, and SUSTAIN the appellant's removal.[1]

---

[1] Except as otherwise noted in this decision, we have applied the Board's regulations that became effective November 13, 2012. We note, however, that the petition for

BACKGROUND

¶2      The appellant served in the non-critical sensitive position of Accounting Technician with the Defense Finance and Accounting Service (DFAS). MSPB Docket No. CH-0752-10-0294-I-2 (I-2), Initial Appeal File (IAF), Tab 10 at 7, Tab 11 at 8. The agency removed the appellant based on a charge that the Washington Headquarters Service (WHS) Consolidated Adjudications Facility (CAF) had denied him eligibility to occupy a sensitive position. MSPB Docket No. CH-0752-10-0294-I-1 (I-1), IAF, Tab 6, Subtabs 4c, 4f. During the 30-day advance notice period for the removal action, the agency temporarily detailed the appellant to a non-sensitive set of duties. *Id.*, Subtab 4f.

¶3      Following a hearing, the administrative judge reversed the appellant's removal. I-2, IAF, Tab 16, Initial Decision (ID). Relying on *Conyers v. Department of Defense*, 115 M.S.P.R. 572 (2010), and *Northover v. Department of Defense*, 115 M.S.P.R. 451 (2010), the administrative judge found as follows: (1) the Board's review authority in a case like the present one, where the agency removed the appellant for losing a qualification to hold his position, included the authority to review the merits of the determination that the appellant lacked the required qualification; (2) the agency did not prove that the appellant is ineligible to hold a non-critical sensitive position; and (3) even if the agency proved its charge, it did not prove that disciplining the appellant promoted the efficiency of the service. ID at 7-11, 13-14. In response to the appellant's contention that the agency denied him minimum due process of law because the deciding official did not have the discretion to weigh the factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), or take any action but removal, the administrative judge held that the deciding official did not have input into the penalty determination and testified that she would not have removed the appellant

review in this case was filed before that date. Even if we considered the petition under the previous version of the regulations, the outcome would be the same.

if given a choice. ID at 14-15. Thus, she found that the agency improperly imposed the penalty of removal even if the agency had properly sustained the charges. ID at 15. Finally, the administrative judge found that the appellant did not prove his affirmative defense of harmful error. ID at 12-13.

¶4    On petition for review, the agency asserts that the administrative judge should not have applied *Conyers* and *Northover* because those decisions were not yet final and, in any event, the Board decided those cases incorrectly and should give deference to its WHS CAF decision finding the appellant ineligible to occupy a sensitive position. I-2, Petition for Review (PFR) File, Tab 1 at 6-12. The agency further argues that the administrative judge's findings on the merits, the efficiency of the service, and the penalty are incorrect. *Id.* at 12-20. The appellant has filed an opposition to the agency's petition for review and a cross petition for review asserting that the administrative judge erred in finding that the appellant did not prove harmful error. PFR File, Tab 4.

¶5    The Clerk of the Board thereafter issued an Order informing the parties that the U.S. Court of Appeals for the Federal Circuit's decision in *Gargiulo v. Department of Homeland Security*, 727 F.3d 1181 (Fed. Cir. 2013), may affect the outcome of this case and inviting the parties to file briefs addressing the possible application of *Gargiulo* to the appellant's constitutional due process claims. PFR File, Tab 6. The parties have filed responses to the Order issued by the Clerk of the Board. *Id.*, Tabs 7-8.[2]

---

[2] The appellant has filed a motion for leave to file a supplemental notice concerning the application of *Gargiulo* to his constitutional due process claim. PFR File, Tab 11. The appellant contends that there is a statement in a government brief in a separate U.S. Supreme Court case that supports his arguments and that did not become available until after the deadline for responding to the Order issued by the Clerk of the Board, that he wishes to submit only legal argument, and that the agency would not be prejudiced if the Board granted his motion. *Id.* at 2. We deny the motion upon finding that the appellant has not shown that this evidence or argument is new and material and was not readily available before the record closed. *See Durr v. Department of Veterans Affairs*, 119 M.S.P.R. 195, ¶ 23 (2013); 5 C.F.R. § 1201.114(a)(5), (k).

ANALYSIS

The Board's review of the agency's action is limited.

In *Conyers*, 115 M.S.P.R. 572, ¶ 13, and *Northover*, 115 M.S.P.R. 451, ¶ 13, the Board held that the Supreme Court's decision in *Department of the Navy v. Egan*, 484 U.S. 518 (1988), limited Board review of an otherwise appealable action only if that action was based upon a denial, revocation, or suspension of a "security clearance," i.e., a denial of access to classified information or eligibility for such access. Accordingly, the Board found in *Conyers* and *Northover* that an adverse action that was based on the agency's decision that an employee was not eligible to occupy a non-critical sensitive position was subject to the same review as other actions under 5 U.S.C. chapter 75, including review of the merits of the agency's decision on eligibility. *See Conyers*, 115 M.S.P.R. 572, ¶¶ 13, 32-34; *Northover*, 115 M.S.P.R. 451, ¶¶ 13, 30-33.

A divided Federal Circuit panel reversed the Board's decisions in *Conyers* and *Northover*, holding that the Board cannot review the merits of an agency's national security determinations regarding an employee's eligibility to occupy a sensitive position that implicates national security. *Berry v. Conyers*, 692 F.3d 1223, 1225, 1237 (Fed. Cir. 2012). The court later vacated the above panel decision and granted rehearing en banc. *Berry v. Conyers*, 497 F. App'x 64 (Fed. Cir. 2013). The court then issued an en banc decision in which a majority of the court reversed and remanded the Board's decision in *Northover* and dismissed the appeal in *Conyers* for lack of jurisdiction. *Kaplan v. Conyers*, 733 F.3d 1148, 1150-52, 1166-67 (Fed. Cir. 2013), *cert. denied*, *Northover v. Archuleta*, 134 S. Ct. 1759 (2014). In its en banc decision in *Conyers*, 733 F.3d at 1158-60, the Federal Circuit held that *Egan* prohibits Board review of Department of Defense (DOD) national security determinations concerning the eligibility of an individual to occupy a "sensitive" position, regardless of whether the position requires access to classified information. In support of this holding, the court found that "there is no meaningful difference in substance between a

designation that a position is 'sensitive' and a designation that a position requires 'access to classified information.' Rather, what matters is that both designations concern national security." *Id.* at 1160. Accordingly, under the Federal Circuit's decision in *Conyers*, the limited scope of review set forth in *Egan* applies to appeals such as this one, where an adverse action is based on the decision that an employee is not eligible to occupy a non-critical sensitive position. *See id.* at 1158-60; *Ingram v. Department of Defense*, 120 M.S.P.R. 420, ¶ 9 (2013).

¶8      In *Egan*, the Supreme Court held that the Board does not have authority to review the substance of a security clearance determination, contrary to what is required generally in other adverse action appeals. *Egan*, 484 U.S. at 530-31. The Court held that, in an appeal under 5 U.S.C. § 7513 based on the denial of a security clearance, the Board has authority to review only whether: (1) an executive branch employer determined that the employee's position required a security clearance; (2) the clearance was denied or revoked; (3) the employee was provided with the procedural protections specified in 5 U.S.C. § 7513; and (4) transfer to a non-sensitive position was feasible when another source, such as a statute or regulation, provides the employee a substantive right to such reassignment. *See Conyers*, 733 F.3d at 1151 (citing *Egan*, 484 U.S. at 530); *Griffin v. Defense Mapping Agency*, 864 F.2d 1579, 1580 (Fed. Cir. 1989); *Buelna v. Department of Homeland Security*, 121 M.S.P.R. 262, ¶ 14 n.5 (2014). The Court ruled that "[n]othing in the [statute enacting 5 U.S.C. § 7513] . . . direct[ed] or empower[ed] the Board to go further." *Egan*, 484 U.S. at 530. Our review is therefore limited to the issues set forth in *Egan*.

¶9      In applying the limited scope of review under *Egan*, we must affirm the agency's removal action. *See Ingram*, 120 M.S.P.R. 420, ¶¶ 12-13. The appellant's position of Accounting Technician required that he maintain eligibility to occupy a non-critical sensitive position. I-1, IAF, Tab 6, Subtabs 4k, 4l, 4m; I-2, IAF, Tab 10 at 7; Hearing Transcript (HT) at 10, 58. Furthermore, the WHS CAF issued a letter denying the appellant eligibility for

access to classified information and/or occupancy of a sensitive position.  I-1, IAF, Tab 6, Subtab 4g; I-2, IAF, Tab 10 at 9.[3]  In addition, the agency complied with the procedural protections specified in 5 U.S.C. § 7513 in removing the appellant from his position.  Specifically, the agency provided the appellant with 30 days' advance written notice of the proposed removal, reasons for the proposed action, and a reasonable opportunity to reply.  I-1, IAF, Tab 6, Subtab 4f; *see* 5 U.S.C. § 7513(b)(1)-(2).  The agency notified the appellant of his right to be represented by an attorney and provided him with a written decision letter.  I-1, IAF, Tab 6, Subtabs 4c, 4f; *see* 5 U.S.C. § 7513(b)(3)-(4).  Therefore, the agency complied with the requirements set forth at 5 U.S.C. § 7513 in removing the appellant.  There is no indication in the record that the agency was required to consider transferring the appellant to a non-sensitive position.  *See* I-1, IAF, Tab 6, Subtab 1 at 11-12.

The appellant has not proven that the agency violated his due process rights.

¶10    In its response to the Order issued by the Clerk of the Board, the agency asserts that the court's holding in *Gargiulo*—that due process is not required in the suspension or revocation of a security clearance—should apply in this case to the revocation of eligibility to occupy a sensitive position.  PFR File, Tab 7 at 8-10.  The agency therefore contends that the Board "need not consider whether the [a]ppellant was given due process procedures before a decision maker that

---

[3] The appellant asserts on review that, while the cross petition for review in this case was pending, "DFAS re-investigated [the a]ppellant's eligibility to occupy a sensitive position," and, following the reinvestigation, restored the appellant to work.  PFR File, Tab 8 at 7.  The appellant contends that "[u]pon information and belief, DFAS found [the a]ppellant to be eligible to occupy a sensitive position and restored him to work in a sensitive position."  *Id*.  Even assuming that the appellant has been returned to duty in 2014, we find that his 2009 removal, I-1, IAF, Tab 6, Subtabs 4a, 4c, is still within our jurisdiction because there is no indication that the appellant has consented to divestiture of Board jurisdiction or that the agency has completely rescinded the action being appealed.  *See Himmel v. Department of Justice*, 6 M.S.P.R. 484, 486 (1981).

could ultimately change the outcome of the decision" because the Board "can only consider whether [the a]ppellant was given the appropriate procedures under 5 U.S.C. § 7513," and there is no dispute that the agency provided those procedures. PFR File, Tab 7 at 10-11. The appellant, by contrast, asserts that *Gargiulo* does not bar the appellant's constitutional due process claim because *Gargiulo* is "limited to shielding from review only those agency procedures and determinations that are part of the sensitive position eligibility process" and does not eliminate the due process requirement that an agency appoint a deciding official with genuine decision-making authority. PFR File, Tab 8 at 4-5, 15-17.

¶11 We recognize that employees do not have a property interest in access to classified information and that the termination of that access does not implicate any due process concerns. *Flores v. Department of Defense*, 121 M.S.P.R. 287, ¶ 9 (2014). Like a security clearance, the granting of eligibility to occupy a sensitive position is a matter within the Executive's broad discretion to make determinations concerning national security. *Id.* Therefore, just as it is obvious that no one has a right to a security clearance, it is likewise clear that an employee has no property interest in eligibility to occupy a sensitive position, and the denial of the appellant's eligibility to occupy a sensitive position is not itself subject to due process requirements. *Id.*

¶12 Nevertheless, by virtue of being an employee under 5 U.S.C. § 7511, and thus removable only for cause, the appellant did have a property interest in his continued employment. *Flores*, 121 M.S.P.R. 287, ¶ 10. Therefore, he was entitled to due process, including notice and a meaningful opportunity to respond, prior to being removed. *Id.*; *see Gargiulo*, 727 F.3d at 1185 (although Mr. Gargiulo had no due process rights relating to the procedures used to determine whether to suspend or revoke his security clearance, he did have due process rights concerning his indefinite suspension). It is the appellant's removal, not his loss of eligibility to occupy a sensitive position, that triggered due process protections. *Flores*, 121 M.S.P.R. 287, ¶ 10. The Board may review the due

process protections afforded in the removal proceedings without second guessing the underlying eligibility determination. *Id*.; *see Buelna*, 121 M.S.P.R. 262, ¶ 15 (the Court did not have occasion in *Egan* to decide if the Board was authorized to consider a claim that an agency denied due process in taking an adverse action based on a security clearance determination).

¶13    In *Buelna*, 121 M.S.P.R. 262, ¶¶ 3-4, 26-28, which involved an indefinite suspension based in part on the suspension of a security clearance, the Board held that, if there are "viable alternatives" to the indefinite suspension, due process requires that the employee be afforded an opportunity to invoke the discretion of a deciding official with authority to select such alternatives. The Board found that the right to invoke the deciding official's discretion exists only in such cases where there is doubt as to the appropriateness or necessity of the penalty and that due process does not demand that the deciding official consider alternatives that are prohibited, impracticable, or outside management's purview. *Id*., ¶ 27.

¶14    In the instant matter, the deciding official indicated in her decision letter that "I have no authority to review, change, or influence the determination made by CAF concerning either your access to sensitive information or whether your reply was timely filed." I-1, IAF, Tab 6, Subtab 4c. The deciding official also noted in the decision letter that the agency had no available positions that did not require access to sensitive information. *Id*.; HT at 14, 16 (testimony of the deciding official that she "had to remove" the appellant because all of the positions at DFAS were categorized as non-critical sensitive, and there were no positions that were not classified that way). She further noted that "I have decided to take this action because your continued assignment to a set of temporary, non-sensitive duties for an indefinite period of time does not promote the efficiency of the service." I-1, IAF, Tab 6, Subtab 4c. In addition, the agency's representative indicated that DFAS "has no ability to impact, negotiate or change the risk determinations made by the DOD WHS," and "DFAS is bound by the risk determinations notwithstanding DFAS' desire to keep what it might

determine are excellent employees in DFAS' employ." I-1, IAF, Tab 6, Subtab 1 at 11-12. The deciding official testified that she did not consider any penalty other than removal and did not conduct a *Douglas* factor analysis because "I didn't have a choice. That was the only thing that we, that we had, only option we had." HT at 16. The deciding official testified that, because all DFAS positions were classified as non-critical sensitive, there were no positions to which she could have assigned the appellant. *Id*. at 14, 16. She further testified that she did not have a choice in deciding to remove the appellant, that she was told that she had to remove him, and that she would not have removed him if she had been given the choice. *Id*. at 18-19. The deciding official testified that, although she signed the decision letter, she did not prepare it. *Id*. at 19.

¶15    The appellant has not identified any viable alternatives to his removal in this case, and we find no such alternatives. Given the record evidence establishing that all positions within DFAS were classified as non-critical sensitive, any alternative to removal that would have retained the appellant in his Accounting Technician position, reassigned him to another position within DFAS, or indefinitely assigned him to non-sensitive duties without his being assigned to a position in the civil service was either prohibited, impracticable, or outside the purview of DFAS management. *See* 5 U.S.C. § 2105(a)(1) (defining "employee" as an individual appointed in the civil service); 5 U.S.C. § 2101(1) (the "civil service" consists of all appointive positions in the executive, judicial, and legislative branches); *Bracey v. Office of Personnel Management*, 236 F.3d 1356, 1359 (Fed. Cir. 2001) ("We are aware of no setting in the federal employment system in which an employee is considered to hold a 'position' consisting of a set of ungraded, unclassified duties that have been assigned to that employee on an ad hoc basis."); *cf. McFadden v. Department of Defense*, 85 M.S.P.R. 18, ¶ 20 (1999) (an agency is not obligated to accommodate a disabled employee by permanently assigning her to light-duty tasks when those tasks do not comprise a complete and separate position).

¶16     When an agency has effected an indefinite suspension without pay pending the completion of an investigation and/or resolution of an appellant's security clearance status, the Board has suggested that placement on administrative leave "may" be a viable alternative to suspension without pay. *See Buelna*, 121 M.S.P.R. 262, ¶¶ 4, 28. Here, however, there was no pending adjudication of the appellant's eligibility to occupy a non-critical sensitive position. Rather, such eligibility had been denied and the appellant's removal had been proposed. Even assuming that there was a "practicable" alternative in the sense that someone in DFAS management may have had the authority to create a non-sensitive position for the appellant to occupy, *see Haeuser v. Department of Law, Government of Guam*, 97 F.3d 1152, 1159 n.4 (9th Cir. 1996) (contrasting the terms "practicable" and "practical," with "practicable" referring to something that can be put into effect, and "practical" referring to something that is also sensible and worthwhile), the Board does not have the authority to determine whether such an alternative would be practicable, *see Skees v. Department of the Navy*, 864 F.2d 1576, 1578 (Fed. Cir. 1989) ("If the Board cannot review the employee's loss of security clearance, it is even further beyond question that it cannot review the Navy's judgment that the position itself requires the clearance."); *see also Conyers*, 733 F.3d at 1155 ("*Egan*, at its core, explained that it is essential for the President and the DOD to have broad discretion in making determinations concerning national security."). The Board is not permitted to second-guess the agency's determination to classify positions as non-critical sensitive. Accordingly, we find that the appellant has not established a due process violation in the absence of a showing that there were viable alternatives to his removal. *See Buelna*, 121 M.S.P.R. 262, ¶¶ 26-28.

The appellant has not proven harmful error.

¶17     The administrative judge found that the appellant did not prove that the agency committed harmful error when it failed to forward a letter it had received from the appellant's bankruptcy attorney to the CAF. ID at 4, 12-13. This letter

was sent to the agency in response to the CAF's Statement of Reasons (SOR) to Deny Eligibility for Occupancy of a Sensitive Position, indicated that the appellant had filed a bankruptcy petition to "help resolve his financial situation," and enclosed a copy of the appellant's outstanding creditors listed on his bankruptcy petition. I-2, IAF, Tab 10 at 17-28, 37. The administrative judge held that there was no violation of agency procedures because the letter in question was not signed by the appellant or provided by a representative designated by the appellant. ID at 12. She further found, in any event, that the appellant did not show that he was subjected to harm because the letter contained additional evidence of the appellant's delinquent accounts with no evidence that they had been resolved. ID at 12-13. The administrative judge held that, although the appellant argued that the CAF's decision would have been appealable if the agency had treated the letter as a response and forwarded it to the CAF, "[h]e does not argue, nor does the record show, that the CAF in receipt of the letter was likely to have found the appellant eligible for a [non-critical sensitive] position." ID at 13.

¶18 The appellant asserts in his cross petition for review that the administrative judge erroneously found that the agency did not violate its procedures and that the appellant was not subjected to harm as a result of the alleged error. PFR File, Tab 4 at 26-32. In this regard, the appellant contends that the agency's point of contact (POC) between the CAF and the appellant was responsible for ensuring that the appellant understood the procedures for responding to the SOR and that the appellant's response was forwarded to the CAF. *Id*. at 27. The appellant asserts that the POC did not forward the letter he received from the appellant's bankruptcy attorney to the CAF or at least ask the appellant whether that letter was intended to be his response to the SOR. *Id*. at 28-29. The appellant further contends that, if the POC had forwarded the letter to the CAF as a response to the SOR, the CAF would have based its letter of denial on the facts of the appellant's financial situation, rather than on his failure to timely respond to the SOR, and

likely would have granted the appellant conditional eligibility and reexamined his financial record at a later time. *Id*. at 29-31.

¶19     Pursuant to DOD Regulation 5200.2-R, "[t]he head of the local organization of the individual receiving an SOR shall designate a POC to serve as a liaison between the CAF and the individual." I-2, IAF, Tab 12 at 71, 86. "The duties of the POC will include, but not necessarily be limited to, delivering the SOR; having the individual acknowledge receipt of the SOR; determining whether the individual intends to respond within the time specified; ensuring that the individual understands the consequences of the proposed action, as well as the [need] to respond in a timely fashion"; explaining how to obtain time extensions and procure copies of investigative records as well as the procedures for responding to the SOR; and ensuring that the individual understands that he can obtain legal counsel or other assistance at his own expense. *Id*. at 86-87. No unfavorable administrative action shall be taken unless the individual concerned has been afforded an opportunity to reply in writing to the CAF within 30 calendar days. *Id.* A failure to reply within that time period "will result in forfeiture of all future appeal rights with regard to the unfavorable administrative action," and responses to the CAF must be forwarded through the head of the employing organization. *Id*. at 86-87.

¶20     The appellant has not identified any particular provision of DOD Regulation 5200.2-R that the agency violated when it apparently determined that the letter from the bankruptcy attorney did not constitute a response to the SOR. *See* HT at 23, 28-29 (testimony of a POC that the letter from the bankruptcy attorney was not a response to the SOR, but merely information forwarded to the POC to assist the POC in helping the appellant respond to the SOR). Even assuming, however, that the agency committed a procedural error, the appellant has not shown that the agency likely would have reached a different result in the absence of such an error. Harmful error is error by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion

different from the one it would have reached in the absence or cure of the error. 5 C.F.R. § 1201.56(c)(3). Although the appellant established that it was *possible* that the CAF could issue a conditional letter of eligibility if it is informed that an employee has filed a bankruptcy petition, *see* HT at 38-39, he has not shown that it is *likely* that the CAF in this case would have reached a different conclusion if it had known that the appellant had filed a bankruptcy petition, *see Johnson v. Department of Transportation*, 24 M.S.P.R. 475, 476 (1984); *see also Parker v. Defense Logistics Agency*, 1 M.S.P.R. 505, 514 (1980) (the mere theoretical possibility of prejudice cannot suffice as a basis for inferring actual prejudice). Thus, he has not shown that it is likely that the agency would not have removed him in the absence of any procedural error.

¶21 Accordingly, the agency's petition for review is GRANTED, the appellant's cross petition for review is DENIED, the initial decision is REVERSED, and the appellant's removal is SUSTAINED.

## ORDER

¶22 This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27,

2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right.  It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court.  The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.